UNITED STATES ATTORNEYS OFFICE
WILLIAM E. FITZPATRICK
Acting United States Attorney
EAMONN O'HAGAN
Assistant U.S. Attorney
970 Broad Street, Suite 700
Newark, NJ 07102-2535
Tel: (973) 645-2874

*Attorneys for the United States of America*

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| *In re* <br><br> ANTHONY M. MORTELLITE, JR. and COLLEEN MORTELLITE, <br><br>        Debtors. <br><br> *In re* <br><br> BLUES BROTHERS, LLC, <br><br>        Debtor. | Chapter 12 <br><br> Case Nos. 17-21818-ABA <br>       17-21820-ABA <br><br> (Jointly Administered) <br><br> Judge: Andrew B. Altenburg, Jr. <br><br> Hearing Date: October 5, 2017 <br> Hearing Time: 10:00 a.m. |

**OBJECTION OF UNITED STATES DEPARTMENT OF AGRICULTURE FARM SERVICE AGENCY TO CONFIRMATION OF DEBTORS' <u>CHAPTER 12 PLAN OF REORGANIZATION</u>**

THE UNITED STATES OF AMERICA, on behalf of the United States Department of Agriculture – Farm Service Agency ("<u>FSA</u>"), submits the following objection to confirmation of the above-captioned debtors' Chapter 12 Plan of Reorganization (the "<u>Plan</u>") [ECF Doc No. 79 in Case No. 17-21818]; [ECF Doc. No. 34 in Case No. 17-21820]. In support thereof, FSA respectfully represents as follows:

## RELEVANT BACKGROUND

1. Anthony and Colleen Mortellite and Blues Brothers, LLC (the "Debtors") filed voluntary petitions under chapter 12 of Title 11 of the United States Code (the "Bankruptcy Code") on June 8, 2017 (the "Petition Date") [ECF Doc. No. 1]. The Debtors' bankruptcy cases are being jointly administered.[1]

2. FSA filed a proof of secured claim against the Debtors in the amount of $32,943.60 (the "FSA Claim"). *See* Claim No. 13-1. The FSA Claim arises from loans made by FSA to the Debtors. *Id.* The FSA Claim is secured by, *inter alia*, the Debtors' real estate, crops, machinery, and equipment. *Id.* The FSA Claim is oversecured. *Id.*

## OBJECTION

### A. The Plan is not Confirmable with Respect to the FSA Claim

3. With respect to the FSA Claim, Bankruptcy Code section 1225(a)(5) requires, *inter alia*, that the Plan provide for the retention of FSA's liens and full payment, plus post-confirmation interest. 11 U.S.C. § 1225(a)(5); *Koopmans v. Farm Credit Servs.*, 196 B.R. 425, 426 (N.D. Ind. 1996) (recognizing that payment of post-confirmation interest is required under section 1225(a)(5) of the Bankruptcy Code). FSA is also entitled to postpetition, pre-confirmation interest under Bankruptcy Code section 506(b) because, as noted above, the FSA Claim is oversecured (*i.e.*, the value of collateral securing the FSA Claim is greater than the amount of the claim).[2] 11 U.S.C. § 506(b) (requiring payment of interest on oversecured claims).

---

[1] Unless otherwise specified, references to ECF docket entries are to those in Case No. 17-21818.
[2] The contractual rate of interest on the FSA Claim is 4.75%. Claim No. 13-1.

4.  Contrary to section 1225(a)(5)'s requirements, the Plan is not clear as to whether it will fully satisfy the FSA Claim (including required post-petition and post-confirmation interest). *See* Plan at 10. Rather, the Plan proposes, at some undetermined time, to partially surrender collateral to FSA. *Id.* According to the Plan, the surrendered items are "believed" to have value sufficient to satisfy the FSA Claim. *Id.* Such a partial surrender is not permissible because the Debtors have failed to obtain an actual valuation of the relevant collateral under Bankruptcy Code section 506(a). *In re Kerwin-White*, 129 B.R. 375, 384 (Bankr. D. Vt. 1991) (recognizing possibility of partial surrender to oversecured creditor under Bankruptcy Code section 1225(a)(5) *after* valuation of collateral is obtained under Bankruptcy Code section 506(a)); *In re Caraway*, 95 B.R. 466, 466 (Bankr. W.D. Ky. 1988) ("[T]his chapter 12 plan cannot be confirmed in its present state since the debtor is not entitled to make a determination of the value of the property he wishes to surrender to the creditors by simply adopting the creditor's own appraisal report. This is a matter that needs to be resolved by the court through means of a valuation hearing.").

5.  Here, the Debtors have not sought a valuation from the Court under section 506(a), but instead speculate as to what the collateral is "believed to be worth." Plan at 10; Fed. R. Bankr. P. 3012 (providing that court can determine value of collateral under Bankruptcy Code section 506(a) on motion and after notice and a hearing). Indeed, the Plan itself recognizes that the values it assumes are speculative.[3] Plan at 10 (recognizing that actual value of surrendered

---

[3] What is more, the Debtors have demonstrated a lack of reliability when it comes to valuing other collateral, such as their real estate. Specifically, the Plan suggests that, based on an appraisal, the Debtors' real estate is worth only $600,000.00. Plan at 12. Based on information and belief, however, a more recent appraisal indicates that the real estate is worth over $2 million. Thus, although there does not appear to be any dispute that FSA is oversecured, it remains to be seen whether the "believed" values attributed to the subset of FSA's collateral are accurate such that Bankruptcy Code section 1225(a)(5)'s requirements have been met.

collateral may be in excess of FSA claim and purporting to require FSA to liquidate collateral in that event and thereafter remit excess proceeds to another creditor).

6. Aside from failing to establish that the FSA Claim will be paid in full plus interest as required by Bankruptcy Code sections 506(b) and 1225(a)(5), the Plan proposes an inefficient, impermissible, and potentially wasteful means of paying the FSA Claim. As noted above, the Plan proposes to simply surrender certain collateral to the United States government, which is not in the business of liquidating farm equipment. Moreover, the Plan impermissibly purports to require the United States to (i) independently determine the actual value of the surrendered items; (ii) conduct a sale of the surrendered items if the independently determined value is greater than the amount of the FSA claim; and (iii) assume a payment obligation to another creditor (Farm Credit East, ACA ("Farm Credit East"), depending upon the independently determined value of the surrendered collateral. Plan at 10. Not only is the Bankruptcy Code devoid of any provisions permitting the Debtors to impose such obligations on the United States, but FSA lacks the logistical wherewithal to effectively assume such obligations. Thus, to the extent the Debtors wish to satisfy the FSA Claim from the proceeds of specific collateral, the Debtors should be required to conduct such a sale and remit the proceeds to FSA. Such a mechanism would have the dual benefit of eliminating the uncertainty over the value of collateral that would otherwise be surrendered to FSA.

B. **The Plan is Not Confirmable Because Debtors Have Not Met Burden of Establishing Feasibility**

7. Pursuant to Bankruptcy Code section 1225(a)(6), the Court cannot confirm a chapter 12 plan unless "the debtor will be able to make all payments under the plan and to comply with the plan." 11 U.S.C. § 1225(a)(6). The burden of meeting this "feasibility"

4

requirement rests squarely with the Debtors. *In re Ellis*, 478 B.R. 132, 139 (Bankr. N.D.N.Y. 2012) (explaining that debtor "has the burden to establish all of the elements essential to confirmation of the Plan" including the feasibility requirement of section 1225(a)(6)). Here, the Debtors have failed to carry their burden of establishing that the Plan is feasible.

8.  According the Plan, the Debtors' gross receipts in 2017 are expected to total $329,440.05. Plan at 2. The Plan further states that the Debtors' total expenses paid through September 6, 2017 are $145,126.75. Plan at 3. Additionally, the Plan notes that payments of $147,750.00 will have been made under cash collateral orders as of September 15, 2017. *Id.* Deducting these costs from the Debtors' projected 2017 gross receipts leaves only $36,563.30. *Id.* On a going forward basis, the Debtors will need to generate significantly more gross income to meet their obligations under the Plan, which include, *inter alia*, a $100,000.00 annual payment to Farm Credit East alone. *Id.* at 9-17. The Plan, however, is completely devoid of any income projections for the Debtors over the life of the Plan. *In re Snider Farms, Inc.*, 83 B.R. 1003, 1006 (Bankr. N.D. Ind. 1988) (explaining that, in conducting feasibility analysis under section 1225(a)(6), [t]he Court is in effect required to predict *based on the historical data provided by the parties . . . and projections made thereon*, whether the Debtor will 'be able to make all payments under the plan and to comply with the plan.'" (emphasis added)). The most the Plan musters of this front is the following tepid statement: "It is from the proceeds of the sale of fruit that the debtor will be paying the payments necessary to effectuate the Plan." Plan at 8. On the present record, the Debtors have therefore failed to meet their burden under Bankruptcy Code section 1225(a)(6) of demonstrating that the Plan is feasible. As such, the Plan cannot be confirmed. 11 U.S.C. § 1225(a)(6).

## **CONCLUSION**

WHEREFORE, for the foregoing reasons, FSA requests that the Court (i) deny confirmation of the Plan; and (ii) grant any other and further relief that the Court deems just and proper.

Dated: September 27, 2017

                                        WILLIAM E. FITZPATRICK
                                      Acting United States Attorney

                                      */s/ Eamonn O'Hagan*
                                      EAMONN O'HAGAN
                                      Assistant U.S. Attorney

                                      *Attorneys for the United States of America*