**UNITED STATES ATTORNEY'S OFFICE**
WILLIAM E. FITZPATRICK
Acting United States Attorney
EAMONN O'HAGAN
Assistant U.S. Attorney
970 Broad Street, Suite 700
Newark, NJ 07102-2535
Tel: (973) 645-2874

*Attorneys for the United States of America*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| *In re* <br><br> ANTHONY M. MORTELLITE, JR. and COLLEEN MORTELLITE, <br><br>                           Debtors. <br><br> *In re* <br><br> BLUES BROTHERS, LLC, <br><br>                           Debtor. | Chapter 12 <br><br> Case Nos. 17-21818-ABA <br>                 17-21820-ABA <br><br> (Jointly Administered) <br><br> Judge: Andrew B. Altenburg, Jr. <br><br> **Hearing Date: November 17, 2017** <br> **Hearing Time: 10:00 a.m.** |

**OBJECTION OF UNITED STATES DEPARTMENT OF AGRICULTURE FARM
SERVICE AGENCY TO CONFIRMATION OF DEBTORS'
<u>SECOND AMENDED CHAPTER 12 PLAN OF REORGANIZATION</u>**

THE UNITED STATES OF AMERICA, on behalf of the United States Department of Agriculture – Farm Service Agency ("<u>FSA</u>"), submits the following objection to confirmation of the above-captioned debtors' Second Amended Chapter 12 Plan of Reorganization (the "<u>Plan</u>") [ECF Doc No. 130]. In support thereof, FSA respectfully represents as follows:

## RELEVANT BACKGROUND

1. Anthony and Colleen Mortellite and Blues Brothers, LLC (the "Debtors") filed voluntary petitions under chapter 12 of Title 11 of the United States Code (the "Bankruptcy Code") on June 8, 2017 (the "Petition Date") [ECF Doc. No. 1]. The Debtors' bankruptcy cases are being jointly administered.[1]

2. FSA filed a proof of secured claim against the Debtors in the amount of $32,943.60 (the "FSA Claim"). *See* Claim No. 13-1. The FSA Claim arises from loans made by FSA to the Debtors. *Id.* The FSA Claim is secured by, *inter alia*, the Debtors' real estate, crops, machinery, and equipment. *Id.* The FSA Claim is oversecured. *Id.*

## OBJECTION

### A. **The Plan is not Confirmable with Respect to the FSA Claim**

3. With respect to the FSA Claim, Bankruptcy Code section 1225(a)(5) requires, *inter alia*, that the Plan provide for the retention of FSA's liens and full payment, plus post-confirmation interest. 11 U.S.C. § 1225(a)(5); *Koopmans v. Farm Credit Servs.*, 196 B.R. 425, 426 (N.D. Ind. 1996) (recognizing that payment of post-confirmation interest is required under section 1225(a)(5) of the Bankruptcy Code). FSA is also entitled to postpetition, pre-confirmation interest under Bankruptcy Code section 506(b) because, as noted above, the FSA Claim is oversecured (*i.e.*, the value of collateral securing the FSA Claim is greater than the amount of the claim).[2] 11 U.S.C. § 506(b) (requiring payment of interest on oversecured claims).

---

[1] Unless otherwise specified, references to ECF docket entries are to those in Case No. 17-21818.
[2] The contractual rate of interest on the FSA Claim is 4.75%. Claim No. 13-1.

4. Contrary to section 1225(a)(5)'s requirements, the Plan remains unclear as to whether it will fully satisfy the FSA Claim (including required post-petition and post-confirmation interest). *See* Plan at 11. Specifically, the Plan proposes, at some undetermined time, to partially surrender collateral to FSA. *Id.* According to the Plan, the surrendered items are "believed" to have value sufficient to satisfy the FSA Claim. *Id.* Such a partial surrender is not permissible because the Debtors have failed to obtain an actual valuation of the relevant collateral under Bankruptcy Code section 506(a). *In re Kerwin-White*, 129 B.R. 375, 384 (Bankr. D. Vt. 1991) (recognizing possibility of partial surrender to oversecured creditor under Bankruptcy Code section 1225(a)(5) *after* valuation of collateral is obtained under Bankruptcy Code section 506(a)); *In re Caraway*, 95 B.R. 466, 466 (Bankr. W.D. Ky. 1988) ("[T]his chapter 12 plan cannot be confirmed in its present state since the debtor is not entitled to make a determination of the value of the property he wishes to surrender to the creditors by simply adopting the creditor's own appraisal report. This is a matter that needs to be resolved by the court through means of a valuation hearing.").

5. Here, the Debtors have not sought a valuation from the Court under section 506(a), but instead speculate as to what the collateral is "believed to be worth." Plan at 11; Fed. R. Bankr. P. 3012 (providing that court can determine value of collateral under Bankruptcy Code section 506(a) on motion and after notice and a hearing). Indeed, the Plan itself recognizes that the values it assumes are speculative. Plan at 11 (recognizing that actual value of surrendered collateral may be in excess of FSA claim and purporting to require FSA to liquidate collateral in that event and thereafter remit excess proceeds to another creditor).

6. Aside from failing to establish that the FSA Claim will be paid in full plus interest as required by Bankruptcy Code sections 506(b) and 1225(a)(5), the Plan proposes an inefficient, impermissible, and potentially wasteful means of paying the FSA Claim. As noted above, the Plan proposes to simply surrender certain collateral to the United States government, which is not in the business of liquidating farm equipment. Moreover, the Plan impermissibly purports to require the United States to (i) independently determine the actual value of the surrendered items; (ii) conduct a sale of the surrendered items if the independently determined value is greater than the amount of the FSA claim; and (iii) assume a payment obligation to another creditor (Farm Credit East, ACA ("Farm Credit East")), depending upon the independently determined value of the surrendered collateral. Plan at 11. Not only is the Bankruptcy Code devoid of any provisions permitting the Debtors to impose such obligations on the United States, but FSA lacks the logistical wherewithal to effectively assume such obligations. Thus, to the extent the Debtors wish to satisfy the FSA Claim from the proceeds of specific collateral, the Debtors should be required to conduct such a sale and remit the proceeds to FSA. Such a mechanism would have the dual benefit of eliminating the uncertainty over the value of collateral that would otherwise be surrendered to FSA.[3]

---

[3] The Plan now provides that "[t]o the extent that USDA seeks help from [the Debtors] to liquidate the property being surrendered so that the entire claim, including post-petition interest, can be paid, the Debtor will participate in such liquidation to the extent that USDA authorizes." Plan at 11. The Plan further states that "[i]f the equipment being surrendered is insufficient to produce monies to pay off the allowed amount of the secured claim of USDA, including such interest that accrues, then the USDA can designate additional equipment to be surrendered and liquidated so that its claim is paid in full." *Id.* at 11-12. Because FSA has already made clear that it desires for the Debtors to conduct the liquidation of its collateral, there is no reason for the Plan to include contradictory provisions calling for (i) the collateral to be surrender of collateral to FSA, (ii) the imposition of an obligation on FSA to independently determine the value of the surrendered collateral, (iii) the imposition of an obligation on FSA to conduct a sale of the surrendered collateral, and (iv) the imposition of an obligation on FSA to assume a payment obligation to Farm Credit East. As such, those provisions should be removed from the Plan to avoid any ambiguity as to how the FSA Claim will be treated.

B. **The Plan is Not Confirmable Because Debtors Have Not Met Burden of Establishing Feasibility**

7. Pursuant to Bankruptcy Code section 1225(a)(6), the Court cannot confirm a chapter 12 plan unless "the debtor will be able to make all payments under the plan and to comply with the plan." 11 U.S.C. § 1225(a)(6). The burden of meeting this "feasibility" requirement rests squarely with the Debtors. *In re Ellis*, 478 B.R. 132, 139 (Bankr. N.D.N.Y. 2012) (explaining that debtor "has the burden to establish all of the elements essential to confirmation of the Plan" including the feasibility requirement of section 1225(a)(6)). FSA hereby joins in the objections of the Chapter 12 Trustee and Farm Credit East regarding the Plan's lack of feasibility under section 1225(a)(6).

## CONCLUSION

WHEREFORE, for the foregoing reasons, FSA requests that the Court (i) deny confirmation of the Plan; and (ii) grant any other and further relief that the Court deems just and proper.

Dated: November 9, 2017

                                          WILLIAM E. FITZPATRICK
                                          Acting United States Attorney

                                          */s/ Eamonn O'Hagan*
                                          EAMONN O'HAGAN
                                          Assistant U.S. Attorney

                                          *Attorneys for the United States of America*