**STARK & STARK**
A Professional Corporation
Timothy P. Duggan, Esq (TD-3231)
993 Lenox Drive, Bldg. 2
Lawrenceville, NJ 08648-2389
(609) 896-9060
Attorneys for Farm Credit East, ACA

In the Matter of:

ANTHONY M. MORTELLITE, JR., and
COLLEEN MORTELLITE,

                    Debtors.
_____

In the Matter of:

BLUES BROTHERS, LLC.,

                    Debtor.

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY

CASE NO. 17-21818 (ABA)

CASE NO. 17-21820 (ABA)

**MEMROANDUM OF LAW IN
REPLY TO DEBTOR'S OPPISITION
TO ALLOWANCE OF
ADMINISTRATIVE CLAIM**

      At the outset of this case, Farm Credit East, ACA ("Farm Credit") objected to the use of its cash collateral and explained why a combination of payments and replacements liens were not adequate protection for the use of its cash collateral. The Court agreed that replacement liens in crops are too speculative and risky to provide any type of protection. However, the Debtors and Court wanted this year's crop to be harvested and understood that the issue is not whether the cash is necessary, but whether Farm Credit's interest in the harvested crops (not the plants as alleged by counsel), could be protected. The Debtors were seeking to use $475,000 of cash collateral – the proceeds from the crops which were encumbered with Farm Credit's lien. These facts are not disputed.

      The Court, Debtors, Chapter 12 Trustee and Farm Credit *reached an agreement* on the use of cash collateral in order to save time and money litigating adequate protection and, from the Debtors'

prospective, ending the case. In consideration for the use of its cash in a case where the Debtors could not prove adequate protection, the Court, Debtors and Chapter 12 Trustee all agreed that Farm Credit would receive an administrative priority claim under Bankruptcy Code § 507(b). The Second Interim Order entered July 13, 2017 (DOC # 47) and the Final Order entered August 9, 2017 (DOC # 66) **both expressly granted** Farm Credit an administrative claim "to the extent any Cash Collateral is used by the Debtors." Now that the cash is all used up (except for about $70,000), the Debtors *for the first time* are raising an objection to a term in two separate Orders. The Debtors are judicially estopped from taking this position.

In a case where New Hampshire and Maine were disputing a boundary, the United States Supreme Court enforced the terms of a consent decree applying the doctrine of judicial estoppel. *New Hampshire v. Maine*, 532 U.S. 742 (2001). In discussing the doctrine, the Court pronounced:

> "[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining [*10] that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." Davis v. Wakelee, 156 U.S. 680, 689, 15 S.Ct. 555, 39 L.Ed. 578 (1895). This rule, known as judicial estoppel, "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." Pegram v. Herdrich, 530 U.S. 211, 227, n. 8, 120 S.Ct. 2143, 147 L.Ed.2d 164 (2000); see 18 Moore's Federal Practice § 134.30, p. 134-62 (3d ed. 2000) ("The doctrine of judicial estoppel prevents a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding"); 18 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 4477, p. 782 (1981) (hereinafter Wright) ("absent any good explanation, a party should not be allowed to gain an advantage by litigation on one theory, and then seek an inconsistent advantage by pursuing an incompatible theory").
> 
> . . .
> 
> Courts have observed that "[t]he circumstances under which judicial estoppel may [*11] appropriately be invoked are probably not reducible to any general formulation of principle," *Allen,* 667 F.2d at 1166; accord, *Lowery v. Stovall,* 92 F.3d 219, 223 (C.A.4 1996); *Patriot Cinemas, Inc. v. General Cinema Corp.,* 834 F.2d 208, 212 (C.A.1 1987). Nevertheless, several factors typically inform the decision whether to apply the doctrine in a particular case: First, a party's later position must be "clearly inconsistent" with its earlier position. *United States v. Hook,* 195 F.3d 299, 306 (C.A.7 1999); *In re Coastal Plains, Inc.,* 179 F.3d 197, 206 (C.A.5 1999); *Hossaini v. Western Mo. Medical Center,* 140 F.3d 1140, 1143 (C.A.8 1998); *Maharaj v. Bankamerica Corp.,* 128 F.3d 94, 98 (C.A.2 1997). Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that

judicial acceptance of an inconsistent position in a later proceeding would create "the perception that either the first or the second court was misled," *Edwards,* 690 F.2d at 599. Absent success in a prior proceeding, a party's later inconsistent position introduces no "risk of inconsistent court determinations," *United States v. C.I.T. Constr. Inc.,* 944 F.2d 253, 259 (C.A.5 1991), [*12] and thus poses little threat to judicial integrity. See *Hook,* 195 F.3d, at 306; *Maharaj,* 128 F.3d, at 98; *Konstantinidis,* 626 F.2d at 939. A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. See *Davis,* 156 U.S. at 689, 15 S.Ct. 555, 39 L. Ed. 578; *Philadelphia, W., & B.R. Co. v. Howard,* 54 U.S. 307, 13 How. 307, 335-337, 14 L.Ed. 157 (1851); *Scarano,* 203 F.2d at 513 (judicial estoppel forbids use of "intentional self-contradiction … as a means of obtaining unfair advantage"); see also 18 Wright § 4477, p. 782.

Here, all three factors set forth above exist. First, the two positions taken by the Debtors are inconsistent. In the Cash Collateral Orders (the first position), the Debtors agreed Farm Credit was to receive an administrative claim – the Cash Collateral Orders are clear on their face. Now, the Debtors are advancing an inconsistent position – Farm Credit is not entitled to an administrative claim as a matter of law. These two positions are inconsistent.

Second, by agreeing to the inclusion of this provision in the Cash Collateral Orders knowing they would take a different position later in the case, is misleading to all parties and the Court. Third, and most important, the Debtors gained an unfair advantage since the cash collateral has been spent, except for a small amount.

Farm Credit would not have agreed to the use of its cash collateral without this protection. The briefs filed by Farm Credit made it clear that Farm Credit did not believe a replacement lien provided any protection. In addition, Farm Credit objected to "rent payments" as adequate protection. It was not until the Debtors agreed to pay $130,000 and grant Farm Credit an administrative lien did Farm Credit agree to allow the use of its cash collateral.

The Debtors should be judicially estopped from making the arguments under Bankruptcy Code § 1205 because it obtained all of the benefits of the two cash collateral orders at the expense of Farm Credit. If the Debtors objected to the grant of the administrative claim up front, Farm Credit

would have tried the case at the two plenary hearings. Now, the money is gone and there is no way to go back in time and have a trial on the issue.

As for the Orders themselves, the carve-out for the Chapter 12 Trustee and Debtors' counsel fees is not relevant. The subordination will only apply of the case gets converted to Chapter 7.

As for the protection provided to Farm Credit, it does not exist. In the original motion, Farm Credit lays out the facts surrounding the use of the cash collateral. The total cash collateral based upon the actual operating results was $333,440.50 – an undisputed fact. The Debtors used $288,262.91 of the cash collateral – an undisputed fact. Farm Credit received $130,000 in payments. If the $130,000 payment is deducted from the $288,262.91, an additional $158,262.91 of Farm Credit's cash collateral was used – an undisputed fact.

How did the Debtors protect Farm Credit for the use of $158,262.91 of cash collateral? The $130,000 did nothing to protect the use of $158,262 since it has been deducted from the $288,262.91 of cash collateral to get to the net number consumed. Based upon the Debtors' cash flow budget, all cash from next year's budget is being used to pay expenses between now and October 2018. The same for the following years.

The Debtors should not have used the money if they intended to take this disingenuous position.

                                  STARK & STARK,
                                  A Professional Corporation
                                  Attorneys for Farm Credit East, ACA

                                  By: /s/ *Timothy P. Duggan*
Dated: November 14, 2017                 TIMOTHY P. DUGGAN

4846-4573-7813, v. 2