**STARK & STARK**
A Professional Corporation
Timothy P. Duggan, Esq (TD-3231)
993 Lenox Drive, Bldg. 2
Lawrenceville, NJ 08648-2389
(609) 896-9060
Attorneys for Farm Credit East, ACA

| | |
|---|---|
| In the Matter of:<br><br>ANTHONY M. MORTELLITE, JR., and COLLEEN MORTELLITE,<br><br>                    Debtors.<br><br>In the Matter of:<br><br>BLUES BROTHERS, LLC.,<br><br>                    Debtor. | UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEW JERSEY<br><br>CASE NO. 17-21818 (ABA)<br><br><br><br>CASE NO. 17-21820 (ABA)<br><br>**MEMORANDUM OF LAW IN REPLY TO DEBTORS' POST-TRIAL SUBMISSION** |

**PRELIMINARY STATEMENT**

The Court provided the Debtors with an opportunity to submit a memorandum of law explaining how the Debtors can pay Farm Credit East's administrative claim under the Debtors' Second Amended Plan. The Debtors were not granted leave to file additional evidence (ie. new certification from their accountant) or amend the terms of the Second Amended Plan (as proposed in the Memorandum of Law). In short, the Debtors are proposing a modified plan with the following changes:

1. The Plan term increases from three years to five years.

2. The Plan does not treat all similarly situated administrative claimants the same – some get paid on the effective date and others over 5 years.

3. The Plan makes use of the Debtors' "slush fund", which was originally characterized as "unanticipated expenses / capital improvements" on the budget. The Debtors now

propose to dip into the slush fund to make payment to Farm Credit. If these funds are not really necessary for capital improvements, the money should have been deemed disposable income and paid to unsecured creditors under the Second Amended Plan This last minute change may be the most compelling evidence of bad faith since it is clear the unexpected expenses / capital improvement fund is not a necessary expense and should have been included in disposable income.

## LEGAL ARGUMENTS

A.  **New Evidence Should Be Excluded**.

Debtors' counsel rested after presenting his entire case. The Court concluded the trial and all admissible evidence was submitted to the Court. After the record was closed, the Court allowed the Debtors to submit a *limited legal argument* in a closing brief. Farm Credit objects to the Debtors' effort to supplement the record with a supplemental certification of their accountant.

The Debtors have changed their budget once again and are seeking to introduce new evidence after the trial was completed. The new budget and payment plan should be stricken by the Court.

B.  **The Plan Exceeds The Three Year Time Limit.**

The Second Amended Plan proposed to pay unsecured creditors over three years. For example, on page 17 of the Second Amended Plan, the individual debtors propose to pay unsecured creditor $3,000 per year for three years. On Page 18 of the Second Amended Plan, the unsecured creditors of Blues Brothers are to be paid $3,000 over three years. Finally, on page 18 and 19, the joint debtors argue they have met the "disposable income test" since they are contributing disposable income to the trustee for three years, and the budget attached to the Second Amended Plan is a three year budget.

However, the Debtors' Supplemental Memorandum of Law proposes to pay Farm Credit over five years. (Memorandum, at 3, ("$30,000 per year for five years")). The Second Amended

Plan is only a three year plan as required under 11 U.S.C. § 1222(c). There is no motion or plan before this Court which establishes any type of "cause" to extend the plan to a five year payment plan. This is a plan modification which has not been authorized by this Court.

C. **The Plain Does Not Treat All Administrative Claims The Same**.

Bankruptcy Code section 1222(a)(3) requires that claims be provided the same treatment for each claim within a particular class. The Bankruptcy Court raised this issue and requested that Debtors' counsel address it. However, consistent with prior briefing in this case, Debtors' ignored the Court's direction.

On page 15 of the Second Amended Plan, the Debtors place all Priority Unsecured Claims in a separate class. With the exception of Debtors' counsel and Debtors' accountant, all other unsecured priority creditors are to be paid (a) "in full within thirty days of the Court allowing the claim of the Chapter 12 Trustee", or (b) "in full on the effective date of the plan" (tax claims). Mr. Kasen and Mr. Williams have agreed to different treatment.

Here, some priority unsecured creditors are getting favorable treatment (Chapter 12 Trustee and taxing authorities), while Farm Credit is getting strung out over five years. This is a clear violation of Bankruptcy Code §1222(a)(3).

D. **The Debtors' Use of a Slush Fund Evidences Bad Faith**.

The record contains numerous examples of bad faith. However, the use of a slush fund may be the best evidence of all.

The Debtors' accountant prepared and testified on a budget that showed all necessary expenses for the business so the Court to make a determination on feasibility and disposable income. (Second Amended Plan, at 20; trail testimony). The Debtor testified he helped prepare the budget and confirmed it is a true and correct budget. However, we now know the budget was not accurate.

In regards to disposable income for a business (ie. Blues Brothers), only "expenditures necessary for the continuation, preservation, and operation of the debtor's business" may be deducted

-3-

from the debtor's income. 11 U.S.C. § 1225(b)(2)(B). It is assumed that the accountant and Debtors' counsel were familiar with the term 'disposable income" since it is used in the Second Amended Plan and Mr. Williams' Certification (Doc # 153, ¶ 18). The issue was also raised at trial.

The Second Amended Plan and Williams Certification state there is $6,000 of disposable income each year to pay unsecured creditors. However, now that the Debtor needs to "find" $158,000 of cash, the facts and opinions change:

1. The unsecured creditors still only get $6,000 per year (ie. all disposable income).
2. From the necessary expenses, $150,000 ($30,000 per year for 5 years) is no longer "necessary" and available to pay Farm Credit's administrative claim.
3. The $150,000 is coming from a slush fund noted at "unexpected expenses / capital improvements."

It is painfully clear that the Debtor and his accountant are trying to pull a fast one on this Court, the Chapter 12 Trustee and unsecured creditors. In order to "hide" disposable income, the Debtors allege they need $50,000 in year two and $55,000 in year three of plan for unexpected expenses and capital improvements. (Doc 153-1, Exh. To Accountant Certification, Budget, page 2 and 30.) It now appears that $60,000 of this money is not really necessary and can be used to pay Farm Credit's administrative claim.

The Debtors will say whatever is necessary to try to convince this Court to allow them to stay on their farm. The Debtors were not truthful about their income on Schedule I, disclosed assets that did not exist ($120,000 accounts receivable), and tried to fabricate ownership of the berries on the day of the cash collateral hearing to free up cash for their personal use. This type of lack of candor was also reinforced when the Debtor testified about how he completes his farmland assessment forms which are also certified (ie. I say anything to get out of that office).

The Court has given this Debtor every opportunity to confirm a plan and great expense to Farm Credit. To confirm a plan based upon this record would add insult to injury.

E. **The Plan is Not Feasible.**

The Debtors cannot pay the $158,000 within 30 days of confirmation. The Debtors cannot pay the $158,000 over three years, which is the life of the Plan. The Debtors cannot amend an unconfirmed Plan after the close of evidence.

F. **The Debtors Cannot File Additional Pleadings.**

This case must end. Farm Credit objects to any additional pleadings that may be filed by the Debtors.

## CONCLUSION

This entire case, including the Chapter 12 plan, was filed in bad faith. For the Debtor to offer appraisal testimony that 100 acres of blueberry and blackberry bushes, which produced $1 million of income in its best year, adds no value to a preserved farm, shows that this plan is a hope and dream.

The Debtors bear the initial burden attacking Farm Credit's secured claim, a burden they did not meet since the Debtors failed to offer any testimony on the value of the blueberry bushes. As a result, the burden does not shift to Farm Credit and its claim is allowed as a fully secured claim.

STARK & STARK,
A Professional Corporation
Attorneys for Farm Credit East, ACA

By: /s/ *Timothy P. Duggan*

Dated: December 12, 2017         TIMOTHY P. DUGGAN

4841-0431-5992, v. 4